IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. _____

JOSH SMART,

    Plaintiff,

vs.

TOP PARK SERVICES, LLC, f/k/a
BRANDO MANAGEMENT
SERVICES, LLC; MIKE (NEIL)
BENDER; and MATTHEW RING,

    Defendants.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JOSH SMART, by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 3, hereby files this Complaint and Demand for Jury Trial against the following defendants: TOP PARK SERVICES, LLC, f/k/a BRANDO MANAGEMENT SERVICES, LLC ("Top Park" or the "Company"); MIKE (NEIL) BENDER ("Bender"); and MATTHEW RING ("Ring"). Plaintiff states the following in support of his claims:

## NATURE OF THE ACTION

1. This action seeks damages and other relief based on the Defendants' groping and other forms of sexual harassment directed against him and Plaintiff's termination from employment because of his refusal to accede to requests for sex from the Company's senior management (i.e., Defendants Ring and Bender), in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. 2000e-(2) and (3), and the Florida Civil Rights Act, Act of 1992, § 760.01 et seq., Florida Statutes, as amended ("the FCRA"). In addition, Plaintiff alleges that his termination from employment for complaining about unlawful sexual harassment

violates the Florida Whistleblower Statute, Section 448.102, Florida Statutes ("the FWA"). Finally, Plaintiff alleges claims for battery against Defendants Ring and Bender under Florida common law.

## THE PARTIES

2. TOP PARK SERVICES, LLC, f/k/a BRANDO MANAGEMENT SERVICES, LLC, is a Delaware Limited Liability Company whose principal address is in Fort Lauderdale, Florida.

3. Top Park is in the real estate development business.

4. At all relevant times, Top Park maintained an office in Broward County.

5. Bender is the owner of Top Park.

6. Bender resides in Fort Lauderdale, Florida.

7. Beginning on or about August 2017, Ring was the President of Top Park (then called Brando Management).

8. Ring resides in Fort Lauderdale, Florida

9. Plaintiff was employed by Top Park as a Personal Trainer for the Company's senior officers. Plaintiff reported to Bender.

10. Plaintiff began working for Top Park in September 2017.

11. Top Park employed no fewer than 15 persons at all relevant times. Top Park therefore is an "employer" as defined by Title VII and the FCRA.

12. Top Park employed no fewer than 10 persons at all relevant times. Top Park therefore is an "employer" as defined by the FWA.

13. Plaintiff was employed by Top Park and performed work for Top Park in Broward County.

## **VENUE AND JURISDICTION**

14. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as the cause of action arises under federal statute, to wit, the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-(2) and (3).

15. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367 because the state law claims are related to claims in the action within the Court's original jurisdiction such that they form part of the same case or controversy.

16. Top Park's principal place of business is in Broward County, and this action accrued in Broward County where Plaintiff worked for Top Park. Therefore, venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (2).

## **ADMINISTRATIVE PREREQUISITES**

17. Plaintiff dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") on or about August 6, 2018, alleging sex discrimination, sexual harassment, and retaliation.

18. The EEOC issued its Right to Sue Notice on April 16, 2019.

19. More than 180 days have expired since Plaintiff filed his charge of discrimination with the FCHR, and the FCHR has neither conciliated nor issued a determination of whether there is reasonable cause.

20. This case was initiated in this Court within 90 days of Plaintiff's receipt of his Notice of Right to Sue from the EEOC.

**FACTUAL ALLEGATIONS**

21.     Plaintiff began his employment with Top Park in September 2017 where he was employed as a Personal Trainer for the Company's senior officers.  Prior to September 2017, Plaintiff was employed by a related company essentially doing the same work for the same people.

22.     Prior to his association with the Company, Plaintiff was a personal trainer/fitness director employed at a yacht club.  Bender promised Plaintiff that he would employ him for a minimum of two years if he would transition his clients to other personal trainers and work exclusively for the Company.  Plaintiff agreed to do so and gave up his position at a yacht club and transitioned his existing business and numerous loyal clients to other personal trainers.  Thereafter, Plaintiff worked exclusively for the Company.

23.     Upon hire by the Company, Plaintiff served as the personal trainer for the owner of the Company, Mike (Neil) Bender.  Plaintiff also provided personal training to Bender's spouse (whom Bender has since divorced) and other personnel in the Company.

24.     On the evening of December 18, 2016, Bender, then married, confided to Plaintiff that he was gay.  Bender told Plaintiff that he had developed an intimate relationship with Defendant Ring, whom Bender claimed to have met through an on-line service.

25.     On or about August 2017, Bender made Ring President of Top Park (then called Brando Management) notwithstanding Ring's lack of management experience.

26.     Plaintiff began providing personal training services to Ring.

27.     Plaintiff was sexually harassed by both Ring and Bender on numerous occasions. These acts include the following:

    a. Plaintiff received numerous unwanted invitations to engage in sex with Bender or Ring, or both.

b. Plaintiff received unwanted invitations (sometimes via text message) by Ring and Bender to join them in bed.

c. Plaintiff received from both Ring and Bender several unwanted sexually suggestive text messages some of which contained explicit content.

d. Bender sent Plaintiff via text message unsolicited photographs of nude males with their genitals exposed, even after Plaintiff told Bender to stop.

e. Ring sent Plaintiff a photo of himself. The photo was unsolicited by Plaintiff and is unmistakably sexually suggestive.

f. When Plaintiff sent via text message a photograph of his injured shoulder immediately after surgery, Bender and Ring responded via text message to say how much they wanted to suck his nipple.

g. Bender told Plaintiff in a text message that he was going to get his hands on Plaintiff's "two rocks" and let his fingers wander around. The two rocks were in reference to Plaintiff's buttocks.

h. Plaintiff was grabbed by both Ring and Bender on different occasions and groped Plaintiff in intimate areas, over Plaintiff's objections.

i. Ring told Plaintiff that, as part of his job, he was expected to "put out" (Ring's words, via text message).

j. Ring walked in uninvited when Plaintiff was receiving a massage from the massage therapist. Ring said: "I am a bottom but I sure would top that." The reference was to engaging in gay sex.

k. Ring would often refer to Plaintiff as "Bottom" when addressing him. This name was a reference to gay sex.

    l.    During a workout, Bender told Plaintiff: "If you were wearing a cock ring, you would have my attention."

    m.    Plaintiff learned from a contract employee that Ring told the other employee that his (Ring's) goal was to sleep with Plaintiff.

28.    In all cases when he was approached for sex by Ring or Bender, Plaintiff politely tried to deflect the propositions or asked that it be stopped. Plaintiff never acquiesced to these invitations for sex or indicated that such conduct was welcomed.

29.    Bender told Plaintiff that he (Plaintiff) was his only friend whom he had not slept with. Plaintiff responded that it would need to stay that way.

30.    On May 25, 2018, Plaintiff travelled with Ring and Bender, among others, to Puerto Vallarta, Mexico. Bender invited friends and business associates to join in a party at a public pool. In the pool, Bender began trying to grab Plaintiff -- specifically, Bender was trying to grab Plaintiff's penis. Plaintiff grabbed Bender's hands to prevent Bender from groping him.

31.    While Plaintiff's two hands were occupied restraining Bender's groping, Ring grabbed Plaintiff's buttocks. One of Ring's friends also grabbed Plaintiff's buttocks. Plaintiff left the area because he could not stop these people from sexually touching him.

32.    Bender grabbed the buttocks and penis of one of the other male employees who also complained.

33.    On or about June 13, 2018, Plaintiff complained to Bender that he wanted the sexual harassment to stop. He specifically complained about the way Ring treated him and about the demeaning sexual comments, innuendos and put downs. Plaintiff told Bender that he was being treated like a prostitute.

34. After refusing to accept Bender's and Ring's propositions for sex, and complaining about sexual harassment, in early July, Bender told Plaintiff that he was going to be phased out and let go. Previously, Bender had told Plaintiff repeatedly that he had a long-term future with the Company.

35. Plaintiff was terminated effective July 13, 2018.

36. Other male employees and contract workers complained that they were being sexually harassed by Bender and Ring.

37. On July 23, 2018, Plaintiff, through counsel, informed the Company that Plaintiff was contemplating filing a charge of discrimination with the EEOC. The Company promptly (on July 25, 2018) terminated Plaintiff's brother, Mike Smart, who also worked for Top Park, LLC, and Plaintiff's domestic partner, Duke Siotkas (Siotkas), who worked for a related company (Top Jet, LLC) in which Bender and Ring were senior officers.

38. Mark King, Chief Legal Counsel for the related companies, informed Mike Smart that he was being terminated. When pressed by Mike Smart as to why he was being terminated, King refused to provide an answer other than to say that the decision was at the advice of counsel. King further stated that the decision had nothing to do with performance and that his (Mike Smart's) performance was exemplary. Further, King told Mike Smart that he (Mike Smart) did not violate any company policies.

39. Duke Siotkas was also informed of his termination by Mark King. King told Siotkas that he was being "let go" at the advice of counsel. Siotkas was offered a severance package that stated he was being "laid off," which Siotkas rejected.

40. On October 1, 2018, Top Jet initiated civil litigation against Siotkas alleging that Siotkas had damaged its aircraft while transporting senior officers to and from Indianapolis.

41. Prior to the filing of Plaintiff's charge of discrimination, the Company had not accused Siotkas of damaging its aircraft. While employed by Top Jet, Siotkas had not been disciplined, written up, reproved, or otherwise blamed for any damage to the aircraft.

42. There was no legitimate basis for the allegation that Siotkas had damaged the aircraft and the litigation was advanced for the sole purpose of retaliating against Plaintiff.

## COUNT I – SEXUAL HARASSMENT (QUID PRO QUO) VIOLATION OF TITLE VII AGAINST TOP PARK

43. Plaintiff reasserts his allegations in Paragraphs 1 through 42 as if fully set forth herein.

44. Title VII prohibits employment discrimination based on sex and prohibits conditioning employment and benefits thereof on acquiescence to requests for sexual favors.

45. Plaintiff was phased out of the Company and terminated because he refused the sexual advances of Ring and Bender.

46. As a result of the unlawful termination, Plaintiff has suffered mental anguish, loss of dignity, and other intangible injuries as a direct result of the unlawful conduct he experienced.

47. Plaintiff also requests punitive damages as authorized by Title VII.

48. Plaintiff further seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff requests judgment against Top Park and an award of economic damages, compensatory damages, punitive damages, and attorney's fees and costs as a result of Top Park's Defendant's conduct in violation of Title VII.

## COUNT II – SEXUAL HARASSMENT (HOSTILE WORK ENVIRONMENT) VIOLATION OF TITLE VII AGAINST TOP PARK

49. Plaintiff reasserts his allegations in Paragraphs 1 through 42 as if fully set forth herein.

50. Title VII prohibits employment discrimination based on sex and prohibits harassment based on these protected characteristics.

51. Ring's and Bender's continuing unwanted sexual advances, over Plaintiff's objection, created a hostile work environment in violation of Title VII.

52. As a result of the harassment experienced by Plaintiff, Plaintiff has suffered mental anguish, loss of dignity, and other intangible injuries as a direct result of the harassment he experienced.

53. Plaintiff also requests punitive damages as authorized by Title VII.

54. Plaintiff further seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff requests judgment against Top Park and an award of economic damages, compensatory damages, punitive damages, and attorney's fees and costs as a result of Top Park's conduct in violation of Title VII.

## COUNT III – RETALIATION
## VIOLATION OF TITLE VII AGAINST TOP PARK

55. Plaintiff reasserts his allegations in Paragraphs 1 through 42 as if fully set forth herein.

56. Title VII prohibits retaliation against an employee for opposing conduct which would violate the terms of Title VII.

57. Plaintiff opposed sexual harassment which is prohibited by Title VII when he complained to Bender about sexual harassment that he was subjected to as described in Paragraphs 27 through 32 above.

58. Plaintiff's complaints of sexual harassment, therefore, constituted protected activity under Title VII.

59. Shortly after expressing his opposition to the unlawful discrimination, Plaintiff was informed that he was being transitioned out of the Company and was being terminated.

60. Plaintiff was terminated because of his opposition to the discriminatory conduct to which he was being subjected, in violation of Title VII.

61. Top Park also terminated Plaintiff's brother, Mike Smart, in an effort to harm Plaintiff for his complaints about Bender's and Ring's sexual harassment.

62. Ring and Bender, who were also senior officers of Top Jet, LLC (a related company), also terminated Plaintiff's domestic partner, Duke Siotkas. Siotkas worked as a pilot for Top Jet. Siotkas was terminated and later sued for damaging an aircraft in an effort to harm Plaintiff for his complaints about Bender's and Ring's sexual harassment.

63. Top Park's alleged bases for Plaintiff's termination, and for the terminations of Siotkas and Mike Smart, are pretextual and have been asserted only to cover up the retaliatory nature of Top Park's conduct.

64. As a result of Top Park's retaliatory actions, and its discharge of Plaintiff's employment as a result of his opposition to sexual harassment, Plaintiff has suffered mental anguish, loss of dignity, and other intangible injuries.

65. Plaintiff also requests punitive damages as authorized by Title VII.

66. Plaintiff further seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff requests judgment against Top Park and an award of economic damages, compensatory damages, punitive damages, and attorney's fees and costs as a result of Top Park's conduct in violation of Title VII.

**COUNT IV – SEXUAL HARASSMENT (QUID PRO QUO)**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT AGAINST TOP PARK**

67. Plaintiff reasserts his allegations in Paragraphs 1 through 42 as if fully set forth herein.

68. The FCRA prohibits employment discrimination based on sex and prohibits conditioning employment and benefits thereof on acquiescence to requests for sexual favors.

69. Plaintiff was phased out of the Company and terminated because he refused the sexual advances of Ring and Bender.

70. As a result of the unlawful termination, Plaintiff has suffered mental anguish, loss of dignity, and other intangible injuries as a direct result of the unlawful conduct he experienced.

71. Plaintiff also requests punitive damages as authorized by the FCRA.

72. Plaintiff further seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff requests judgment against Top Park and an award of economic damages, compensatory damages, punitive damages, and attorney's fees and costs as a result of Top Park's conduct in violation of the FCRA.

**COUNT V – SEXUAL HARASSMENT (HOSTILE WORK ENVIRONMENT)**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT AGAINST TOP PARK**

73. Plaintiff reasserts his allegations in Paragraphs 1 through 42 as if fully set forth herein.

74. The FCRA prohibits employment discrimination based on sex and prohibits harassment based on these protected characteristics.

75. Ring's and Bender's continuing unwanted sexual advances, over Plaintiff's objection, created a hostile work environment in violation of the FCRA.

76. As a result of the harassment experienced by Plaintiff, Plaintiff has suffered mental anguish, loss of dignity, and other intangible injuries as a direct result of the harassment he experienced.

77. Plaintiff also requests punitive damages as authorized by the FCRA.

78. Plaintiff further seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff requests judgment against Top Park and an award of economic damages, compensatory damages, punitive damages, and attorney's fees and costs as a result of Top Park's conduct in violation of the FCRA.

## COUNT VI – RETALIATION
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT AGAINST TOP PARK

79. Plaintiff reasserts his allegations in Paragraphs 1 through 42 as if fully set forth herein.

80. The FCRA prohibits retaliation against an employee for opposing conduct which would violate the terms of the FCRA.

81. Plaintiff opposed sexual harassment which is prohibited by the FCRA when he complained to Bender about sexual harassment that he was subjected to as described in Paragraphs 27 through 32 above.

82. Plaintiff's complaints of sexual harassment, therefore, constituted protected activity under the FCRA.

83. Shortly after expressing his opposition to the unlawful discrimination, Plaintiff was informed that he was being transitioned out of the Company and was being terminated.

84. Plaintiff was terminated because of his opposition to the discriminatory conduct to which he was being subjected, in violation of the FCRA.

85. Defendant also terminated Plaintiff's brother, Mike Smart, in an effort to harm Plaintiff for his complaints about Bender's and Ring's sexual harassment.

86. Ring and Bender, who were also senior officers of Top Jet, LLC (a related company), caused Top Jet to terminate the employment of Plaintiff's domestic partner, Duke Siotkas.  Siotkas worked as a pilot for Top Jet.

87. Top Jet terminated Siotkas, and later sued him, in an effort to harm Plaintiff for Plaintiff's complaints about Bender's and Ring's sexual harassment.

88. Defendants' alleged bases for Plaintiff's termination, and for the terminations of Siotkas and Mike Smart, are pretextual and have been asserted only to cover up the retaliatory nature of Defendant's conduct.

89. As a result of Top Park's retaliatory actions, and its discharge of Plaintiff's employment as a result of his opposition to sexual harassment, Plaintiff has suffered mental anguish, loss of dignity, and other intangible injuries.

90. Plaintiff also requests punitive damages as authorized by the FCRA.

91. Plaintiff further seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff requests judgment against Top Park and an award of economic damages, compensatory damages, punitive damages, and attorney's fees and costs as a result of Top Park's conduct in violation of the FCRA.

## COUNT VII
## VIOLATION OF FLORIDA WHISTLEBLOWER ACT AGAINST TOP PARK

92. Plaintiff reasserts his allegations in Paragraphs 1 through 42 as if fully set forth herein.

93. The FWA states in relevant part at Fla. Stat. § 448.102:

> An employer may not take any retaliatory personnel action against an employee because the employee has:
>
> * * *
>
> (3) Objected to . . . any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

94. The FWA prohibits retaliation against an employee for opposing conduct which would violate Title VII or regulations promulgated thereunder, or the FCRA.

95. Plaintiff opposed sexual harassment which is prohibited by Title VII and the FCRA when he complained to Bender about sexual harassment that he was subjected to as described in Paragraphs 27 through 32 above.

96. Plaintiff's complaints of sexual harassment, therefore, constituted protected activity under both Title VII and the FCRA.

97. Shortly after expressing his opposition to the unlawful discrimination, Plaintiff was informed that he was being transitioned out of the Company and was being terminated.

98. Plaintiff was terminated because of his opposition to the discriminatory conduct to which he was being subjected, in violation of Title VII and the FCRA.

99. Top Park also terminated Plaintiff's brother, Mike Smart, in an effort to harm Plaintiff for his complaints about Bender's and Ring's sexual harassment.

100. Ring and Bender, who were also senior officers of Top Jet, LLC (a related company), caused Top Jet to terminate the employment of Plaintiff's domestic partner, Duke Siotkas. Siotkas worked as a pilot for Top Jet. Siotkas was terminated in an effort to harm Plaintiff for his complaints about Bender's and Ring's sexual harassment.

101. Defendants' alleged bases for Plaintiff's termination, and for the terminations of Siotkas and Mike Smart, are pretextual and have been asserted only to cover up the retaliatory nature of Defendants' conduct.

102. As a result of Top Park's retaliatory actions, and its discharge of Plaintiff's employment as a result of his opposition to sexual harassment, Plaintiff has suffered mental anguish, loss of dignity, and other intangible injuries.

103. Plaintiff further seeks his attorney's fees and costs as permitted by law.

WHEREFORE, Plaintiff requests judgment against Top Park and an award of economic damages, compensatory damages, and attorney's fees and costs as a result of Top Park's conduct in violation of the FCRA.

## COUNT VIII
## BATTERY AGAINST DEFENDANT RING

104. Plaintiff reasserts his allegations in Paragraphs 1 through 42 as if fully set forth herein.

105. On more than one occasion, Ring grabbed Plaintiff and groped Plaintiff in intimate areas, over Plaintiff's objections. Specifically, Ring grabbed Plaintiff's buttocks. The touching was intentional, nonconsensual and offensive.

106. As a result of Defendant Ring's actions, Plaintiff has suffered mental anguish, loss of dignity, and other intangible injuries.

WHEREFORE, Plaintiff requests judgment against Ring and an award of compensatory damages, punitive damages, and costs as a result of Defendant Ring's conduct in violation of Florida law.

## COUNT IX
## BATTERY AGAINST DEFENDANT BENDER

107. Plaintiff reasserts his allegations in Paragraphs 1 through 42 as if fully set forth herein.

108. On more than one occasion, Bender grabbed Plaintiff and groped Plaintiff in intimate areas, over Plaintiff's objections. Specifically, Bender grabbed, or attempted to grab, Plaintiff's penis. The touching was intentional, nonconsensual and offensive.

109. As a result of Defendant Ring's actions, Plaintiff has suffered mental anguish, loss of dignity, and other intangible injuries.

WHEREFORE, Plaintiff requests judgment against Defendant and an award of compensatory damages, punitive damages, and costs as a result of Defendant Bender's conduct in violation of Florida law.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury on all claims stated herein for which Florida law provides a right to trial by jury.

Dated: April 25, 2019

                                          Respectfully submitted,

*/s/ Richard D. Tuschman*
Richard D. Tuschman, Esq.
Florida Bar No. 907480
E-mail: rtuschman@gtemploymentlawyers.com
Secondary E-mail: assistant@gtemploymentlawyers.com
**RICHARD D. TUSCHMAN, P.A.**
8551 W. Sunrise Boulevard, Suite 303
Plantation, Florida 33322
Tel: (954) 369-1050 | Fax: (954) 380-8938

*/s/ Mark J. Beutler*
Mark J. Beutler, Esq.
Fla. Bar No. 0023400
Email: mjb@mjbpa.com
**LAW OFFICES OF MARK J. BEUTLER, P.A.**
9100 S. Dadeland Boulevard – Suite 1500
Miami, Florida 33156
Tel: (786) 497-7710 | Fax: (786) 513-4651

*Attorneys for Plaintiff*